IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

UNITED STATES OF AMERICA

vs.                                          Case Nos.:   3:08cr22/LAC/EMT
                                                          3:13cv536/LAC/EMT

NEVILLE McGARITY

---

## REPORT AND RECOMMENDATION

This matter came before the court on Defendant Neville McGarity's "Motion by a Person in Federal Custody to Vacate, Set Aside, or Correct Sentence Under 28 U.S.C. § 2255" and memorandum in support thereof (ECF Nos. 1017, 1039).   The Government responded in opposition (ECF No. 1050), and Defendant filed a reply (ECF No. 1098).   The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.   *See* N.D. Fla. Loc. R. 72.2; *see also* 28 U.S.C. § 636(b) and Fed. R. Civ. P. 72(b).   After a careful review of the record and the arguments presented, it is the opinion of the undersigned that Defendant has not raised any issue requiring an evidentiary hearing and that the § 2255 motion should be denied.   *See* Rules 8(a) and (b), Rules Governing Section 2255 Cases.

## **BACKGROUND**

Defendant and thirteen others were charged in a forty-count superseding indictment with various charges related to the international distribution of child pornography via the internet (ECF No. 78 (Defendant McGarity charged in Counts 1, 2, 10, 21, 33, 40)).   Defendant was represented by appointed counsel Patrick L. Jackson, Esq.   After a six-day jury trial involving seven defendants, Defendant McGarity was convicted of engaging in a child exploitation enterprise ("CEE"), in violation of 18 U.S.C. § 2252A(g) (Count 1); conspiring to advertise, transport/ship, receive, and possess child pornography, and to obstruct an official proceeding, in violation of 18 U.S.C. §§ 371, 1512(k), 2251(e), and 2252A(b) (Count 2); receiving child pornography, in violation of 18 U.S.C. § 2252A(a)(2) and 2 (Count 33); obstructing justice, in violation of 18 U.S.C. § 1512(c) (Count 40); advertising the exchange of child pornography, in violation of 18 U.S.C. § 2251(d)(1) and 2 (Count 10); and knowingly transporting and shipping child pornography, in violation of 18 U.S.C. § 2252A(a)(1) (Count 21) (ECF No. 478).   The court sentenced Defendant to a term of life imprisonment as to Count 1, 600 months as to Counts 2 and 10, 480 months as to Counts 21 and 33, and 240 months as to Count 40, with each count to

Case Nos.: 3:08cr22/LAC/EMT; 3:13cv356/LAC/EMT

run concurrently with the others (ECF No. 611 at 3).   The Defendants who had proceeded to trial filed a consolidated appeal, and the Eleventh Circuit vacated each Defendant's convictions for conspiracy and statutory obstruction of justice in Counts 2 and 40.   United States v. McGarity, 669 F.3d 1218, 1229 (11th Cir. 2012).   It affirmed the remainder of each Defendant's convictions and sentences in an opinion that stated no fewer than five times that the evidence against the Defendants, which included their own confessions,[1] was nothing short of "overwhelming."   *Id.* at 1242, 1243, 1246, 1263.   The Supreme Court denied certiorari (ECF No. 929), and on August 16, 2012, the district court entered an amended judgment; Defendant was sentenced to a term of life imprisonment on Count 1, 600 months on Count 10, and 480 months on Counts 21 and 33, with each count to run concurrently one with the other (ECF No. 919).   Defendant timely filed the instant motion to vacate, raising 12 claims for relief as well as listing "additional grounds" (ECF No. 1017).

---

[1] Defendant contends that his confession was not at all related to the charged conduct (ECF No. 1017 at 31; ECF No. 1098 at 10–11)).   In taking this position, Defendant clearly refers only to his written confession regarding past offenses involving his daughter, and ignores the testimony from Special Agent Rex Miller about his simultaneous verbal confession to his involvement in the instant offense (ECF No. 723 at 221–38).

Case Nos.: 3:08cr22/LAC/EMT; 3:13cv356/LAC/EMT

As noted by the Government, the facts of this case are set forth in the superseding indictment, the transcripts of the trial and sentencing proceedings, the Pre-Sentence Investigation Report ("PSR"), the amended judgment and statement of reasons, and the Eleventh Circuit's opinion on appeal (ECF Nos. 78, 720–725, 761, 903, 919, 920, 1205).   Therefore, the undersigned will provide an abbreviated recitation of the facts here, and relay additional specific facts only as needed for resolution of certain claims raised in the instant motion.

As set forth in the Eleventh Circuit's opinion on appeal, in 2005 an informant notified Constable Brenden Power of the Queensland, Australia Police Service of the existence of a computer ring of child pornography users that operated through internet newsgroups.   The informant revealed which newsgroups the ring was using, the ring's encryption method, and the informant's nickname within the ring, which enabled Constable Power to infiltrate the ring.   Constable Power began monitoring the ring and learned of the sophisticated nature of the ring, including controls on memberships and complicated methods of communicating and posting using encryption.   Members uploaded scrambled and encrypted binary files in one newsgroup, then would place a message in another newsgroup advising that the upload was there with instructions.   Other members could then download the

encrypted message, decrypt and read it, and follow the instructions contained therein to locate and download the files containing child pornography.   The group masked headings when posting files and messages and frequently changed nicknames as a further means of avoiding detection.

After realizing that the ring was operating internationally, Constable Power traveled to the United States in 2006 where he continued his investigation in conjunction with the FBI's Innocent Images Unit.   The joint investigation continued for another year, during which time law enforcement was able to identify 22 members of the child pornography ring, 14 of whom were persons of special interest. Between August 31, 2006 and December 15, 2007, law enforcement detected the upload of over 400,000 images and more than 1,000 videos by ring members.   Not all of the images and videos portrayed child pornography, but many of them depicted the sexual abuse of minors in graphic and grotesque detail.

On February 28, 2008, law enforcement agents simultaneously executed search warrants at the residents of the Defendants in this case.   All Defendants except for one confessed his involvement with child pornography and with the child pornography ring in question.   Encryption keys of the type provided to Constable Power to access the pertinent newsgroup postings were found in the possession of

all Defendants except Defendant McGarity, and after being taken into custody and housed together six of the Defendants, including Defendant McGarity, admitted to the others his membership in the child pornography ring.   United States v. McGarity, 669 F.3d 1218, 1229–31 (11th Cir. 2012).

## **LEGAL ANALYSIS**

General Standard of Review

Collateral review is not a substitute for direct appeal, and therefore the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited.   A prisoner is entitled to relief under section 2255 if the court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack.   *See* 28 U.S.C. § 2255(a); McKay v. United States, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011).   "Relief under 28 U.S.C. § 2255 'is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice.'"   Lynn v. United States, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted).   The "fundamental miscarriage of justice" exception recognized in Murray v. Carrier, 477 U.S. 478, 496 (1986), provides that

it must be shown that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent . . . ."

The law is well established that a district court need not reconsider issues raised in a section 2255 motion which have been resolved on direct appeal.   Rozier v. United States, 701 F.3d 681, 684 (11th Cir. 2012); United States v. Nyhuis, 211 F.3d 1340, 1343 (11th Cir. 2000); Mills v. United States, 36 F.3d 1052, 1056 (11th Cir. 1994).   Once a matter has been decided adversely to a defendant on direct appeal, it cannot be re-litigated in a collateral attack under section 2255.   Nyhuis, 211 F.3d at 1343 (quotation omitted).   Broad discretion is afforded to a court's determination of whether a particular claim has been previously raised.   Sanders v. United States, 373 U.S. 1, 16 (1963) ("identical grounds may often be proved by different factual allegations . . . or supported by different legal arguments . . . or couched in different language . . . or vary in immaterial respects").

Because a motion to vacate under section 2255 is not a substitute for direct appeal, issues which could have been raised on direct appeal are generally not actionable in a section 2255 motion and will be considered procedurally barred. Lynn, 365 F.3d at 1234−35; Bousley v. United States, 523 U.S. 614, 621 (1998); McKay v. United States, 657 F.3d 1190, 1195 (11th Cir. 2011).   An issue is

"'available' on direct appeal when its merits can be reviewed without further factual development." <u>Lynn</u>, 365 F.3d at 1232 n.14 (quoting <u>Mills</u>, 36 F.3d at 1055). Absent a showing that the ground of error was unavailable on direct appeal, a court may not consider the ground in a section 2255 motion unless the defendant establishes (1) cause for not raising the ground on direct appeal, and (2) actual prejudice resulting from the alleged error, that is, alternatively, that he is "actually innocent." <u>Lynn</u>, 365 F.3d at 1234; <u>Bousley</u>, 523 U.S. at 622 (citations omitted). To show cause for procedural default, a defendant must show that "some objective factor external to the defense prevented [him] or his counsel from raising his claims on direct appeal and that this factor cannot be fairly attributable to [defendant's] own conduct." <u>Lynn</u>, 365 F.3d at 1235.   A meritorious claim of ineffective assistance of counsel can constitute cause. *See* <u>Nyhuis</u>, 211 F.3d at 1344.

Ineffective assistance of counsel claims are generally not cognizable on direct appeal and are properly raised by a § 2255 motion regardless of whether they could have been brought on direct appeal. <u>Massaro v. United States</u>, 538 U.S. 500, 503 (2003); *see also* <u>United States v. Franklin</u>, 694 F.3d 1, 8 (11th Cir. 2012).   In order to prevail on a constitutional claim of ineffective assistance of counsel, a defendant must demonstrate both that counsel's performance was below an objective and

reasonable professional norm and that he was prejudiced by this inadequacy. Strickland v. Washington, 466 U.S. 668, 686 (1984); Williams v. Taylor, 529 U.S. 362, 390 (2000); Darden v. United States, 708 F.3d 1225, 1228 (11th Cir. 2013). In applying Strickland, the court may dispose of an ineffective assistance claim if a defendant fails to carry his burden on either of the two prongs.   Strickland, 466 U.S. at 697; Brown v. United States, 720 F.3d 1316, 1326 (11th Cir. 2013); Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir.2000) ("[T]he court need not address the performance prong if the defendant cannot meet the prejudice prong, or vice versa.").

In determining whether counsel's conduct was deficient, this court must, with much deference, consider "whether counsel's assistance was reasonable considering all the circumstances."   Strickland, 466 U.S. at 688; *see also* Dingle v. Sec'y for Dep't of Corr., 480 F.3d 1092, 1099 (11th Cir. 2007).   Reviewing courts are to examine counsel's performance in a highly deferential manner and "must indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance."   Hammond v. Hall, 586 F.3d 1289, 1324 (11th Cir. 2009) (quoting Strickland, 466 U.S. at 689); *see also* Chandler v. United States, 218 F.3d 1305, 1315–16 (11th Cir. 2000) (discussing presumption of reasonableness of counsel's conduct); Lancaster v. Newsome, 880 F.2d 362, 375 (11th Cir. 1989)

(emphasizing that petitioner was "not entitled to error-free representation"). Counsel's performance must be evaluated with a high degree of deference and without the distorting effects of hindsight.   Strickland, 466 U.S. at 689.   To show counsel's performance was unreasonable, a defendant must establish that "no competent counsel would have taken the action that his counsel did take."   Gordon v. United States, 518 F.3d 1291, 1301 (11th Cir. 2008) (citations omitted); Chandler, 218 F.3d at 1315.   When reviewing the performance of an experienced trial counsel, such as Defendant's attorney in this case, the presumption that counsel's conduct was reasonable is even stronger, because "[e]xperience is due some respect." Chandler, 218 F.3d at 1316 n.18.

With regard to the prejudice requirement, defendant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different.   Strickland, 466 U.S. at 694.    "The likelihood of a different result must be substantial, not just conceivable."   Harrington v. Richter, 562 U.S. 86, 112 (2011) (quoting Strickland).    For the court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him."   Lockhart v. Fretwell, 506 U.S. 364, 369–70 (1993); Allen v. Sec'y, Fla. Dep't of Corr., 611 F.3d 740, 754 (11th Cir. 2010).   A defendant therefore must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable."   Lockhart, 506 U.S. at 369 (quoting Strickland, 466 U.S. at 687).   Or in the case of alleged sentencing errors, a defendant must demonstrate that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been less harsh due to a reduction in the defendant's offense level. Glover v. United States, 531 U.S. 198, 203–04 (2001).   A significant increase in sentence is not required to establish prejudice, as "any amount of actual jail time has Sixth Amendment significance."   Id. at 203.

To establish ineffective assistance, Defendant must provide factual support for his contentions regarding counsel's performance.   Smith v. White, 815 F.2d 1401, 1406–07 (11th Cir. 1987).   Bare, conclusory allegations of ineffective assistance are insufficient to satisfy the Strickland test.   *See* Boyd v. Comm'r, Ala. Dep't of Corr., 697 F.3d 1320, 1333–34 (11th Cir. 2012); Garcia v. United States, 456 F. App'x 804, 807 (11th Cir. 2012) (citing Yeck v. Goodwin, 985 F.2d 538, 542 (11th Cir. 1993)); Wilson v. United States, 962 F.2d 996, 998 (11th Cir. 1992); Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991); Stano v. Dugger, 901 F.2d 898, 899 (11th Cir. 1990) (citing Blackledge v. Allison, 431 U.S. 63, 74 (1977)).

The law is well-established that counsel is not ineffective for failing to preserve or argue a meritless claim.   Denson v. United States, 804 F.3d 1339, 1342 (11th Cir. 2015) (citing Freeman v. Attorney General, Florida, 536 F.3d 1225, 1233 (11th Cir. 2008)).   This applies regardless of whether the issue is a trial or sentencing issue.   *See, e.g*., Sneed v. Florida Dep't of Corrections, 496 F. App'x 20, 27 (11th Cir. 2012) (failure to preserve meritless Batson claim not ineffective assistance of counsel); Lattimore v. United States, 345 F. App'x 506, 508 (11th Cir. 2009) (counsel not ineffective for failing to make a meritless objection to an obstruction enhancement); Brownlee v. Haley, 306 F.3d 1043, 1066 (11th Cir. 2002)

(counsel was not ineffective for failing to raise issues clearly lacking in merit); Chandler v. Moore, 240 F.3d 907, 917 (11th Cir. 2001) (counsel not ineffective for failing to object to "innocuous" statements by prosecutor, or accurate statements by prosecutor about effect of potential sentence); Meeks v. Moore, 216 F.3d 951, 961 (11th Cir. 2000) (counsel not ineffective for failing to make meritless motion for change of venue); Jackson v. Herring, 42 F.3d 1350, 1359 (11th Cir. 1995) (counsel need not pursue constitutional claims which he reasonably believes to be of questionable merit); United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992) (no ineffective assistance of counsel for failing to preserve or argue meritless issue).

Finally, the Eleventh Circuit has recognized that given the principles and presumptions set forth above, "the cases in which habeas petitioners can properly prevail . . . are few and far between." Chandler, 218 F.3d at 1313. This is because the test is not what the best lawyers would have done or even what most good lawyers would have done, but rather whether some reasonable lawyer could have acted in the circumstances as defense counsel acted. Dingle, 480 F.3d at 1099; Williamson v. Moore, 221 F.3d 1177, 1180 (11th Cir. 2000). "Even if counsel's decision appears to have been unwise in retrospect, the decision will be held to have been ineffective assistance only if it was 'so patently unreasonable that no competent

attorney would have chosen it.'"   <u>Dingle</u>, 480 F.3d at 1099 (quoting <u>Adams v. Wainwright</u>, 709 F.2d 1443, 1445 (11th Cir. 1983)).   The Sixth Circuit has framed the question as not whether counsel was inadequate, but rather whether counsel's performance was so manifestly ineffective that "defeat was snatched from the hands of probable victory."   <u>United States v. Morrow</u>, 977 F.2d 222, 229 (6th Cir. 1992). Regardless of how the standard is framed, under the prevailing case law it is abundantly clear that a moving defendant has a high hurdle to overcome to establish a violation of his constitutional rights based on his attorney's performance.   A defendant's belief that a certain course of action that counsel failed to take might have helped his case does not direct a finding that counsel was *constitutionally ineffective* under the standards set forth above.

An evidentiary hearing is unnecessary when "the motion and files and records conclusively show that the prisoner is entitled to no relief."   *See* 28 U.S.C. § 2255(b); <u>Rosin v. United States</u>, 786 F.3d 873, 877 (11th Cir. 2015); <u>Gordon v. United States</u>, 518 F.3d 1291, 1301 (11th Cir. 2008).   Not every claim of ineffective assistance of counsel warrants an evidentiary hearing.   <u>Gordon</u>, 518 F.3d at 1301 (citing <u>Vick v. United States</u>, 730 F.2d 707, 708 (11th Cir. 1984)).   To be entitled to a hearing, a defendant must allege facts that, if true would prove he is

entitled to relief.     *See* <u>Hernandez v. United States</u>, 778 F.3d 1230, 1234 (11th Cir. 2015).    A hearing is not required on frivolous claims, conclusory allegations unsupported by specifics, or contentions that are wholly unsupported by the record. *See* <u>Winthrop−Redin v. United States</u>, 767 F .3d 1210, 1216 (11th Cir. 2014) (explaining that "a district court need not hold a hearing if the allegations [in a § 2255 motion] are . . . based upon unsupported generalizations") (internal quotation marks omitted); <u>Peoples v. Campbell</u>, 377 F.3d 1208, 1237 (11th Cir. 2004).    Even affidavits that amount to nothing more than conclusory allegations do not warrant a hearing.    <u>Lynn</u>, 365 F.3d at 1239.    Finally, disputes involving purely legal issues can be resolved by the court without a hearing.

In this case, the Government argues that nearly all of Defendant's claims are procedurally barred.    If Defendant's arguments were taken as stand-alone claims, the Government's assertions would be well-taken.    However, Defendant couches each claim in terms of ineffective assistance of either trial or appellate counsel in his motion, which may defeat the procedural bar.    Thus, the court need not reiterate the standard for, or engage in a discussion of, the procedural bar on each of Defendant's substantive claims.

### 1.    <u>Failure to Challenge Authority of Foreign Officer</u>

Defendant asserts that his trial attorney was constitutionally ineffective because he failed to challenge the jurisdiction and authority of Australian Constable Brenden Power.   Power, he asserts, conducted essentially the entire investigation in this case with the assistance of the FBI, rather than vice versa.   Defendant contends that Constable Power's actions were illegal because as a foreign national, he was not a law enforcement officer sworn under the Constitution of the United States, and that absent evidence procured by Power there would have been no case against him.

The Government likens Constable Power's role as that of a "covert agent" working undercover inside the criminal enterprise (ECF No. 720 at 55; ECF No. 721 at 29).   It posits that Constable Power neither issued subpoenas nor forensically searched the seized evidence because, as he testified at trial, he was not a forensic examiner (ECF No. 720 at 138).   He posted text, but neither uploaded nor distributed child pornography to the group while working in his undercover capacity with the FBI because this would have been against the law in the United States, although not in Queensland (ECF No. 720 at 102; ECF No. 721 at 32–33).   Power downloaded evidence that various Defendants had shared online, but the FBI procured subpoenas and search warrants authorized by United States laws and the

Case Nos.: 3:08cr22/LAC/EMT; 3:13cv304/LAC/EMT

Constitution (ECF No. 721 at 33, 189).   In particular, the Government notes that the evidence obtained during the search of Defendant's residence was obtained through a federal search warrant sworn to by an FBI agent, not Constable Power. Power was neither present for, nor a participant in, Defendant's post-arrest interview, although he was present at the search of co-defendant James Freeman's residence.

There is no constitutional prohibition against United States law enforcement employing the assistance of anyone, including a foreign law enforcement officer, to assist in the investigation and prosecution of a crime, and particularly one that extends beyond national boundaries.   Counsel was not constitutionally ineffective for failing to make such a claim.

2.   <u>Failure to Challenge Venue and Jurisdiction</u>

Defendant next claims that Attorney Jackson was constitutionally ineffective because he failed to raise a challenge to both venue and jurisdiction.   He asserts that nothing in the Government's case connected him in any legally sufficient manner to a Defendant in Florida, and as such the court did not have jurisdiction to try the case.   The question of jurisdiction is simple.   The district courts of the United States have original jurisdiction, exclusive of the courts of the states, of all

offenses against the laws of the United States.    18 U.S.C. § 3231.    Venue, which Defendant appears to use interchangeably with "jurisdiction," addresses where a federal trial may be properly conducted.

Count 1 in this case charged Defendant with conspiracy.    "In a conspiracy case, venue is proper in any district where an overt act was committed in furtherance of the conspiracy."    United States v. Smith, 918 F.2d 1551, 1557 (11th Cir. 1990) (citing Hyde v. United States, 225 U.S. 347, 363 (1912); United States v. Long, 866 F.2d 402, 407 (11th Cir. 1989)); United States v. Bradley, 644 F.3d 1213, 1254 (11th Cir. 2011).    The overt act need not be committed by a defendant in the case; the acts of accomplices and unindicted co-conspirators can also expose the defendant to jurisdiction.    See United States v. Matthews, 168 F.3d 1234, 1246 (11th Cir. 1999). Furthermore, a defendant who is charged as a conspirator is vicariously responsible for the acts of any co-conspirator taken in furtherance of the conspiracy as well as foreseeable consequences thereof.    Bradley, 644 F.3d at 1254–55; Pinkerton v. United States, 328 U.S. 640, 647–48 (1946); United States v. Silvestri, 409 F.3d 1311, 1335 (11th Cir. 2005).    Where an out-of-district defendant aided or abetted a principal who commits a substantive crime in the district of prosecution, venue lies in the district of prosecution as to both the aider and abetter and the principal.

United States v. Long, 866 F.2d 402, 406–07 (11th Cir. 1989).   Finally, offenses begun in one district and completed in another, or committed in more than one district, may be prosecuted in any district in which such offense was begun, continued, or completed.   18 U.S.C. § 3237(a); United States v. McCulley, 673 F.2d 346, 350 (11th Cir. 1982).   Thus, acts by Defendant or his co-conspirators within the Northern District of Florida would be sufficient to establish venue in this district. As noted by the Government, there was evidence at trial of posted advertisements and child pornography that reached to co-defendant James Freeman in the Northern District of Florida.   Specific trial exhibits linked Defendant McGarity and Freeman in accordance with their screen names (*see* ECF No. 1050 at 18 & Exh. B).   Defendant argues in return that these exhibits were unverified, susceptible to forgery, and not accurately identified (ECF No. 1098 at 10 & Exh. 1I1, 1J1).   The Eleventh Circuit noted in its opinion that the Government presented the jury with evidence of Defendant McGarity's screen names, "which he used in posting over 800 messages to the pornography ring."   McGarity, 669 F.3d at 1245. This same evidence could have been used by the Government to defeat a venue challenge.   Thus, in light of the totality of the evidence at trial which established the scope of the conspiracy and its ties to this district through co-defendant Freeman,

counsel was not constitutionally ineffective for failing to raise what would have been a meritless challenge to venue.

    3.   <u>Failure to Move for a Severance</u>

Defendant next contents that his attorney was constitutionally ineffective because he failed to move for a severance.    Defendant notes that "tales of abuse by other [D]efendants," requests for new pornography by one Defendant, and a suggestion for using drug-addled mothers for use of production of photographs by other Defendants led to "the only likely outcome is that the Movant is found guilty by association" (ECF No. 1039 at 7).    While certainly distasteful, the court notes that Defendant's own written confession about his attraction to and molestation of his own daughter was read into the record (ECF No. 723 at 235–38).

It is a well-settled principle that it is preferable for persons who are charged together to also be tried together, particularly in conspiracy cases.    <u>United States v. Green</u>, 818 F.3d 1258, 1282 (11th Cir. 2016) (quoting <u>United States v. Smith</u>, 918 F.2d 1551, 1559 (11th Cir. 1990)); <u>United States v. Browne</u>, 505 F.3d 1229, 1268 (11th Cir. 2007) (citing <u>Zafiro v. United States</u>, 506 U.S. 534, 537–38 (1993) ("There is a preference in the federal system for joint trials of defendants who are indicted together")); <u>United States v. Hill</u>, 643 F.3d 807 (11th Cir. 2011).

Cautionary instructions to the jury to consider the evidence separately, such as the one given in this case, are presumed to guard against prejudice.  United States v. Francis, 131 F.3d 1452, 1459 (11th Cir. 1997) (quoting United States v. Gonzalez, 940 F.2d 1413, 1428 (11th Cir. 1991)); Zafiro, 506 U.S. at 539; United States v. Garcia, 405 F.3d 1260, 1273 (11th Cir. 2005).   In the case at bar, the Government cites the court's instruction that the jury must consider the guilt of each Defendant separately and the fact that the jury returned a not guilty verdict as to one of the counts as evidence of it having done so (*see* ECF No. 469 at 36; ECF No. 482 at 2). In any event, severance is highly disfavored.   Even in a case when two co-conspirators committed murder, the Eleventh Circuit found that severance was not warranted.   *See* United States v. Lopez, 649 F.3d 1222, 1233–36 (11th Cir. 2011). Defendant maintains that, unlike the other Defendants, he had no direct evidence of the enterprise in his possession.   But he seems to dismiss the fact that evidence against him, specifically images of babies being sexually assaulted and his own confession that he molested his biological daughter, was arguably more prejudicial toward the other Defendants than vice versa.   To be sure, other Defendants complained of their trials being joined with McGarity's.   It is certainly true that in a multi-defendant trial, evidence may be introduced against one defendant that is not

probative of the guilt of another defendant.   However, the Government is not barred

by this fact from introducing the evidence at all.   The appellate court found that

Defendant's confession was properly admitted, and the weight of the evidence

against him alone was substantial.   *See* <u>McGarity</u>, 669 F.3d at 1229 n.6, 1243–45.

While Defendant may have preferred, in hindsight, that his trial be severed from that

of his co-defendants, he has not shown any constitutional basis for relief.   Absent a

showing that a motion to sever would have been granted and that the outcome of the

proceedings would have been different, Defendant cannot show that counsel was

constitutionally ineffective for failing to file such a motion.

<u>Failure to Challenge the Search Warrant</u>

Defendant asserts that counsel was constitutionally ineffective because he

failed to challenge the search warrant used to gather evidence against him.

Defendant complains that the affidavit in support of the warrant, executed by FBI

Special Agent Rex Miller, is based not on personal knowledge but on hearsay

obtained from Constable Power.   To the extent Defendant asserts error based on the

involvement of Constable Power, as discussed *supra*, such a claim does not entitle

him to relief.   And Defendant fails to acknowledge that the fact the affidavit

includes personal knowledge beyond that possessed by affiant Rex Miller, is

included in the affidavit itself (ECF No. 1050, Exh. C).  Special Agent Miller expressly states in the affidavit that the statements therein are "based in part on information provided by other Special Agents of the FBI, other law enforcement officers," and on his own investigation, experience, training, and background as a Special Agent (ECF No. 1050, Exh. C at 3–4).  The fact that some of the information originated outside the United States is of no moment.  *See, e.g.,* United States v. Emmanuel, 565 F.3d 1324 (11th Cir. 2009).  Defendant has not shown that the affidavit contains either "deliberate falsehood or [] reckless disregard for the truth," Franks v. Delaware, 438 U.S. 154, 171 (1978), and his suggestion that the affidavit is constitutionally infirm, or that counsel performed deficiently by failing to challenge it, is not well-founded.

    4.   Failure to Move to Suppress Confession

Defendant next argues that counsel was constitutionally ineffective because he failed to move to suppress statements that the FBI obtained during the execution of the search and arrest warrants.  Defendant claims that the FBI used an "excessive show of armed force" in the execution of the warrants which caused him to "do, say, and sign anything to placate the very aggressive agents" (ECF No. 1039 at 11).  He also claims that he asked the agents for counsel, and was denied such, and thus from

that point forward any confessions, <u>Miranda</u> waivers, or inculpatory statements were subject to challenge.

The Government argues that there is no record evidence to support Defendant's assertions of force and coercion.   It notes that Defendant provided both an oral and a written confession, in addition to aiding examiners in searching his digital media by providing passwords for law enforcement to conduct a forensic examination of same. The Government concludes its argument by noting that there is no way Defendant can affirmatively show prejudice because the evidence against him was otherwise overwhelming (ECF No. 1050 at 22).

In support of his reply, Defendant has submitted the affidavits of his mother and father, detailing the display of force that occurred at the time of Defendant's arrest, as well as his own affidavit setting forth his version of the events (ECF No. 1099, Exhs. 3B1-3B2, 3C1-3C2, 3D1-3D6).   Regardless of the contents of these affidavits, fatal to Defendant's claim is the fact that nowhere in his submissions has he expressly stated that he told his attorney about the allegedly egregious law enforcement conduct or asked counsel to move to suppress the evidence in question.[2]

---

[2] Defendant's statement that the Government assumes "that the Movant has never asked counsel to protect his interests in this matter" is insufficient (ECF No. 1098 at 13).

Case Nos.: 3:08cr22/LAC/EMT; 3:13cv304/LAC/EMT

Counsel is not charged with clairvoyance.    He cannot be held to be constitutionally ineffective for failing to divine that there was a potential constitutional issue of which his client did not make him aware.

5.  Failure to Cross-Examine and Impeach Witnesses

Defendant next contends that counsel did not properly cross-examine and impeach the testimony of adverse Government witnesses.    He identifies eight Government witnesses as well as specific questions that counsel should have pursued.   There is nothing in the record to indicate that Defendant discussed these specific points with counsel or requested that such questions be posed to the witnesses.   Nonetheless, a closer review of the issues reveals that counsel was not constitutionally ineffective for his failure to pursue the proposed lines of questioning.

Constable Power, Defendant asserts, should have been cross-examined about the fact that he conducted the "entire investigation" despite his lack of investigative authority in this country, his travels back and forth to his native Australia, the fact that he did not examine every image alleged to have been illegal and in the possession of Defendant, and that Defendant did not have all five key pieces of evidence and two programs that, he asserts, every member of the group had.    Such

assertions are largely factually erroneous or legally irrelevant. Defendant's suggestion that Power singlehandedly conducted the entire investigation is not supported by the record and, similarly, his challenge to the role the Australian national played in investigating the international enterprise has no basis in law.

Defendant next asserts that counsel's performance was constitutionally deficient because he did not elicit testimony that co-defendants Warren Weber, Ruble Keys, and John Mosman were able to see the discovery prior to testifying; that the Defendants did not know each other; and that their testimony was self-serving. Warren Weber's testimony on direct-examination was basically limited to questions about his motivation for testifying, and his information technology contributions to the group in the form of programs identified as the "Blue Screen of Death" and "Swap-N-Glue." During cross-examination and redirect-examination, Weber was asked further questions about the benefit he hoped to gain from testifying, and he confirmed that he did not know any of the participants except by their screen names. Weber also testified that none of the co-defendants ever said that they were innocent, but also that the question of guilt or innocence was not discussed (ECF No. 721 at 199–224). In sum, Mr. Jackson was not the only

attorney who did not pose any questions to Weber, and his failure to do so, in light of Weber's testimony as a whole, was not constitutionally ineffective.

Defendant suggests that counsel should have asked questions of Ruble Keys, a "high ranking" member of the conspiracy, which would have proven that Defendant was not a member of the group.    A review of Keys' testimony suggests that such questions would not have been probative.    Keys, like Weber, knew members of the group only by their nicknames, and he was not sure which members had dropped out at which points in time (ECF No. 721 at 227–44).    Counsel's decision not to ask any questions of this witness was not constitutionally ineffective.

Co-defendant John Mosman testified—as to Defendant McGarity—that he used the nickname Wraith, which was the only nickname listed in the indictment, that McGarity's attraction was to babies, and that McGarity had withheld from the FBI access to an encrypted drive containing his encryption keys for accessing the group (ECF No. 722 at 70–71).[3]   Although most other defense attorneys asked questions of Mosman, Mr. Jackson did not (ECF No. 722 at 63–112).    Several of the questions Defendant now suggests would have required improper speculation on

---

[3] The Government admitted in its closing that in fact the FBI was unable to "break the drive" containing the encryption keys (ECF No. 760 at 97).

Case Nos.: 3:08cr22/LAC/EMT; 3:13cv304/LAC/EMT

the part of the witness, and other questions were covered in some fashion in the questions posed by other defense counsel.   Counsel was not constitutionally ineffective for his decision not to question the witness in the manner Defendant suggests.

Defendant next raises several lines of questioning that, he contends, counsel should have pursued with FBI Special Agents Charles Wilder and Michael Gordon. To the extent Defendant contends that counsel was ineffective for failing to elicit additional testimony about the role of Constable Power in the investigation, his assertions have no merit.   Other questions were covered in the testimony already given.   For instance, Defendant's proposed question about how Gordon could so easily identify him was explained by S.A. Gordon on direct examination (ECF No. 723 at 164–67).   With respect to the questions Defendant suggests should have been posed to Special Agent Rex Miller, who took part in the execution of the federal search and arrest warrants, as noted earlier, if counsel had not been made privy to the events as Defendant alleges they occurred, counsel would have had no good faith basis to pursue this line of questioning.   Agent Miller testified about his conversation with Defendant at the time of the execution of the warrants which resulted in, essentially, a full verbal confession to Defendant's involvement in the

enterprise (ECF No. 723 at 221–33).   Counsel's decision not to engage Miller in further questioning was not constitutionally unreasonable.   Finally, James Jay Sasportas, an FBI forensic examiner, testified about his review of some of the digital evidence pertaining to Defendant McGarity and the fact that he found suspected child pornography (ECF No. 723 at 246–49).   The answer to the question of whether Defendant maintained his child pornography on a single drive or multiple drives would not have assisted in his defense and, conversely, the fact that Sasportas did not find other posts or items related to Defendant's involvement in the conspiracy is likewise not probative of his innocence.   Counsel's lack of cross-examination was not constitutionally ineffective.

### 6.   Failure to Present a Defense and Closing Argument[4]

Defendant claims that his attorney was constitutionally ineffective because he failed to put forth a defense in this case, including at closing where he did not bring to the jury's attention what Defendant refers to as the lack of evidence against him in this case.   There is no affidavit from defense counsel in the record which would confirm the strategy undertaken in this case.   From a review of the record overall,

---

[4] This section incorporates Grounds 7 and 8 of Defendant's motion.

Case Nos.: 3:08cr22/LAC/EMT; 3:13cv304/LAC/EMT

it appears that counsel's strategy was to minimize the focus on his client and avoid drawing attention to the existing evidence of his wrongdoing.   While this may seem unorthodox to Defendant, it is not an unusual tactic in a multi-defendant case, particularly where the evidence is arguably weaker against certain individuals.   In light of both the nature of the case and the evidence of record, it would not have been unreasonable for counsel to have avoided challenging certain relatively minor aspects of the case and thus potentially calling attention, in contrast, to the evidence that did exist, in the vein of "thou doth protest too much."

The court does note that Attorney Jackson was the only attorney to present any testimony at the close of the Government's case (ECF No. 724 at 97–103).   By recalling Special Agent Gordon, counsel was able to rebut the Government's position that law enforcement had seized thumb drives from Defendant containing additional incriminating evidence, and that these drives were inaccessible (ECF No. 724 at 103; *see* ECF No. 760 at 97).   The clear implication from this testimony was that the jury had been presented with **all** of the existing evidence against this Defendant; there was no additional nefarious evidence lurking undiscovered.

Counsel's closing argument, as noted by Defendant, was extremely brief (ECF No. 760 at 83–84).   Again, counsel did not focus on his client's misdeeds.

Mr. Jackson joined the arguments of co-counsel as to the "quality and extent of evidence against Mr. McGarity."   Counsel argued that the Government was trying to group the actions of the co-defendants together and appeal to emotion.    In doing so, counsel referenced a sign he had seen during his military service in Vietnam: "Kill them all.   Let God sort them out."   Mr. Jackson noted that this directive would not be part of the instructions in this case and that the evidence against each Defendant had to be considered individually.    While Defendant now questions the relevance of counsel's allusion to his military service, such may have been, in part, an attempt to appeal to jurors in a geographic area with both a military presence and a history of strong civilian support for the military.    In light of the abundance of evidence against his client, taken as a whole, counsel's strategy was not one that no reasonable counsel would have taken and it was not constitutionally deficient.

### 7.   Failure to Properly Argue a Motion for Judgment of Acquittal

Defendant argues in his ninth ground for relief that counsel did not properly argue his motion for judgment of acquittal and force the court to take notice of the deficiencies in the Government's case.    Defendant's confession to his involvement in the online group, as testified to by Special Agent Gordon, obviated the possibility for a complete judgment of acquittal (ECF No. 723 at 161–220).    To the extent

Defendant argues that the evidence of venue was insufficient and could have properly supported such a motion, his argument is legally infirm, as set forth above.

8.   Failure to Clarify Jury Instructions

Defendant contends that counsel performed deficiently when he did not clarify the jury instructions.   He claims that the misleading and incorrect jury instructions resulted in an improper constructive amendment to the indictment. Specifically, he notes that the instructions submitted to the jury regarding Count One substantially altered the charge against him, in that the word "and" was changed to "or," thus lowering the Government's burden of proof.

Count One charged that Defendant and others did "knowingly and willfully engage in a child exploitation enterprise, that is, the advertisement, transportation **and** shipment of child pornography. . . by means of a computer, as a series of three or more separate incidents and involving more than one victim" (ECF No. 78 at 4) (emphasis added).   The jury was instructed that in order to sustain a conviction it had to find certain facts beyond a reasonable doubt, including that the Defendant "knowingly advertised, transported **or** shipped child pornography . . . on three or more separate incidents" (ECF No. 469 at 17) (emphasis added).   The statute does not specify whether the three incidents must be different "activities"; it states only

that there must be "a series of felony violations constituting three or more separate incidents and involving more than one victim."   18 U.S.C. 2252A(g)(2).   "Where the language of a statute proscribes several means by which the defendant might have committed a violation, the government may plead the offense conjunctively and satisfy its burden of proof by any of the means."   United States v. Cornillie, 92 F.3d 1108, 1110 (11th Cir. 1996) (citing United States v. Burton, 871 F.2d 1566, 1573 (11th Cir. 1989)); United States v. Simpson, 228 F.3d 1294, 1300 (11th Cir. 2000); United States v. Perez, 350 F. App'x 425, 429 (11th Cir. 2009) (citing Cornillie); *see also* United States v. Morales-Martinez, 496 F.3d 356, 358 (5th Cir. 2007) ("[a] disjunctive statute may be pleaded conjunctively and proven disjunctively") (citing United States v. Still, 102 F.3d 118, 124 (5th Cir. 1996)). Thus, the jury instructions were not infirm and counsel was not constitutionally ineffective for failing to seek "clarification" thereof.

The undersigned also notes that the district court's failure to give a unanimity instruction on Count 1, that is an instruction that the jurors must unanimously agree on the underlying predicate offenses which would sustain a conviction, was a key issue on appeal.   The Eleventh Circuit found that the error was harmless with respect to all Defendants except Defendant White, because each of the other

Defendants was convicted of three predicate offenses.   McGarity, 669 F.3d at 1241–51.   As to the other instructions, the court gave the pattern instructions in most instances, and Defendant has not shown that any amendment to the instructions would have altered the outcome of the proceedings.

    9.   Ineffective Assistance of Counsel on Appeal

    Defendant next contends that counsel performed deficiently on appeal.   He asserts that had his attorney presented additional issues and arguments, instead of largely adopting the arguments of the co-defendants, the outcome would have been different.

    Due process of law requires that a defendant receive effective assistance of appellate counsel on his direct appeal.   Evitts v. Lucey, 469 U.S. 387, 396 (1985). However, the Sixth Amendment does not require appellate advocates to raise every non-frivolous issue on appeal if counsel, as a matter of professional judgment, decides not to do so.   Smith v. Robbins, 528 U.S. 259, 287–88 (2000); Knowles v. Mirzayance, 556 U.S. 111, 126–27 (2009); Jones v. Barnes, 463 U.S. 745, 751–52 (1983); Heath v. Jones, 941 F.2d 1126, 1130–31 (11th Cir. 1991).   It is possible to bring a Strickland claim based on counsel's failure to raise a particular claim, but it is difficult to demonstrate in such a situation that counsel's performance was

constitutionally ineffective.    Smith, 528 U.S. at 288 (citing Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986) ("Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome")); *see also* Payne v. United States, 566 F.3d 1276, 1277 (11th Cir. 2009) (citing Smith).    "Experienced advocates since time beyond memory have emphasized the importance of winnowing out weaker arguments on appeal and focusing on one central issue if possible, or at most on a few key issues." Barnes, 463 U.S. at 751–52.    In fact, this is the "hallmark of effective appellate advocacy." Smith v. Murray, 477 U.S. 527, 536 (1986).    The mere fact that one of the non-appealed issues might have been successful does not preclude a finding that the counsel's performance, which must be judged in its entirety, was effective.    *Id.*; Heath, 941 F.2d at 1131 (counsel's appellate advocacy must be judged in its entirety); Reutter v. Secretary for Dept. of Corrections, 232 F. App'x 914, 917 (11th Cir. 2007) (citing Heath).    Of course, appellate counsel is not ineffective for failing to raise claims that are reasonably considered to be without merit.    Brown v. United States, 720 F.3d 1316, 1335 (11th Cir. 2013); Shere v. Sec'y Fla. Dep't of Corr., 537 F.3d 1304, 1311 (11th Cir. 2008); Nyhuis, 211 F.3d at 1344 (citing Alvord v.

<u>Wainwright</u>, 725 F.2d 1282, 1291 (11th Cir. 1984).   And contrary to Defendant's assertion, he does not have a right to have counsel bring forth "all cognizable issues."

The Eleventh Circuit found the evidence in this case to be overwhelming. <u>McGarity</u>, 669 F.3d at 1242–43, 1246, 1263.   Defendant's suggestion that additional arguments regarding prosecutorial misconduct, vague jury instructions, or judicial errors would have altered the outcome of the proceedings are unsupported.   Counsel argued that the effect of the district court's rulings coupled with prosecutorial misconduct amounted to cumulative error warranting a new trial (ECF No. 1050, Exh. D).   The fact that this argument was ultimately unsuccessful is not reflective of counsel's performance.   Defendant has not established that he was prejudiced by counsel's litigation of his appeal.

10. <u>Cumulative Error</u>

Defendant's last substantive claim is one of cumulative error.   He asserts that trial counsel's errors in this case, including his purported failure to address alleged errors by the district court resulted in a jury verdict that is, at minimum, questionable.

It is true that the cumulative effect of several errors that are harmless by themselves could so prejudice a defendant's right to a fair trial that a new trial might be necessary even if the errors considered individually are non-reversible.   *See, e.g.*,

U.S. v. Ramirez, 426 F.3d 1344, 1353 (11th Cir. 2005); United States v. Adams, 74 F.3d 1093, 1099 (11th Cir. 1996); United States v. Thomas, 62 F.3d 1332, 1343 (11th Cir. 1995). However, "[a] defendant is entitled to a fair trial not a perfect one." United States v. Wilson, 788 F.3d 1298, 1315 (11th Cir. 2015); Ramirez, 426 F.3d at 1353; Lutwak v. United States, 344 U.S. 604 (1953). The cumulative error doctrine is inapplicable, however, where the district court commits no individual errors. United States v. Waldon, 363 F.3d 1103, 1110 (11th Cir. 2004); United States v. Barshov, 733 F.2d 842, 852 (11th Cir. 1984) ("Without harmful errors, there can be no cumulative effect compelling reversal."); Mullen v. Blackburn, 808 F.2d 1143, 1147 (5th Cir. 1987) (noting that increasing the number of non-meritorious claims raised will not support a finding of cumulative error because "Twenty times zero equals zero.").

The Supreme Court has not recognized the cumulative error doctrine in the context of ineffective assistance of counsel claims. *See* Forrest v. Fla. Dep't of Corr., 342 F. App'x 560, 565 (11th Cir. 2009). The Forrest court cautioned that the Supreme Court has held that "there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt." *Id.* (quoting United States v.

<u>Cronic</u>, 466 U.S. 648, 659 n.26, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984)).   Thus, in the absence of any error, there can be no cumulative error.   *See* <u>United States v. Hall</u>, 455 F.3d 508, 520 (5th Cir.2006); *see also* <u>Yohey v. Collins</u>, 985 F.2d 222, 229 (5th Cir.1993) (stating that because certain alleged errors did not rise to constitutionally ineffective assistance of counsel, and because certain other claims were meritless, a petitioner had "presented nothing to cumulate"); *accord* <u>Villanueva v. Stephens</u>, 555 F. App'x 300, 308 (5th Cir. 2014) (citing <u>Hall</u>).   Having found no error, there can thus be no cumulative error, and Defendant is not entitled to relief.

<u>Additional Grounds</u>

Lastly, in Defendant's original motion he lists "additional grounds which may be included in an amended 28 U.S.C. § 2255 petition" (ECF No. 1017 at 36).   These grounds include failure to hire an expert, failure to challenge the introduction and sufficiency of the evidence, failure to object, failure to impeach witnesses, failure to suppress witness statements, failure to challenge the indictment and any other failures which may become cognizable due to subsequent rulings from any court."   The claims were not preserved by Defendant's mere mention of them absent any additional information (*see* ECF No. 1019 at n.2), and his request for discovery to

further pursue these issues was denied (*see* ECF No. 1098 at 22–23; ECF Nos. 1104, 1108).   Thus, none of these issues warrant relief.

Conclusion

For all of the foregoing reasons, the court finds that Defendant has failed to show that any of the claims raised in his motion to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 have merit.   Nor has he shown that an evidentiary hearing is warranted.   Therefore Defendant's motion should be denied in its entirety.

## Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2255 Proceedings provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."   A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.   Rule 11(b), § 2255 Rules.

After review of the record, the court finds no substantial showing of the denial of a constitutional right.   § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84

(2000) (explaining how to satisfy this showing) (citation omitted).    Therefore, it is also recommended that the court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."   If there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Based on the foregoing, it is respectfully **RECOMMENDED**:

1.    Defendant's Motion to Vacate, Set Aside or Correct Sentence (ECF No. 1017) be **DENIED**.

2.    A certificate of appealability be denied.

At Pensacola, Florida, this 18th day of November 2016.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M. TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**


Case Nos.: 3:08cr22/LAC/EMT; 3:13cv304/LAC/EMT

## NOTICE TO THE PARTIES

**Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.   <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>   A copy of objections shall be served upon all other parties.   If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.   *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636**.